## HARLEY v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 195.    Argued April 6, 1905.—Decided May 8, 1905.

In order to give the Court of Claims jurisdiction under the act of March 3, 1887, the demand sued on must be founded on a convention between the parties—a coming together of minds—and contracts or obligations implied by law from torts do not meet this condition. *Russell* v. *United States,* 182 U. S. 516, 530.

An employé of the Bureau of Printing and Engraving, who at his own cost and in his own time perfected and patented a device for registering impressions in connection with printing presses, which with his knowledge and consent was used for many years by the Bureau, under orders of the Secretary of the Treasury, and who during that period never made any demand for royalties, cannot, under the circumstances of this case, recover such royalties in the Court of Claims on the ground that a contract existed between him and the Government, because, prior to the use of the device by the Government, the Chief of the Bureau promised to have his rights to the invention protected.

APPELLANT sued in the Court of Claims to recover the sum of $102,000, for the use, during the six years preceding the commencement of the suit, of a device invented by the appellant for registering impressions in connection with printing presses. The Court of Claims dismissed the petition. The findings of the Court of Claims are as follows:

"II. In November, 1869, the Secretary of the Treasury determined that certain valuable securities should not be printed in the Bureau of Engraving and Printing until proper and reliable registers should be attached to the presses. While the Chief of the Bureau was endeavoring to devise and procure a trustworthy form of register, the claimant brought to him the drawings of a device which he had invented, being substantially the device described in the foregoing letters patent. The Chief of the Bureau ordered a register to be immediately made after the claimant's device. At the time of giving such order he understood that the device was the claimant's invention.

"The register so ordered being completed, and tried and found satisfactory, the Chief of the Bureau proposed to take the claimant to the Secretary of the Treasury that he might

explain it to him. The claimant thereupon objected that the invention was not yet patented, and that he wished, before exhibiting it, to obtain a patent for his individual protection. The Chief of the Bureau replied, 'Certainly; I will see that you are protected.' The claimant, then tacitly consenting, was taken before the Secretary, and explained to him the operation of the register, and the Secretary was at the same time informed that this was the register which the claimant had invented. The Secretary approved the form of register, and directed that such registers be made and attached to the presses in the Bureau.

"Before such registers were manufactured the claimant remonstrated to the effect that he wished first to secure a patent. The Chief of the Bureau replied that he would see the claimant protected and would get him a patent attorney who would explain the law to him. This the Chief of the Bureau did, and the attorney so selected proceeded to procure the patent before set forth, the claimant, not the defendants, paying him and the costs and expenses thereof. The attorney so selected at the same time informed the claimant that the manufacture and use of registers in the Bureau would not interfere with or prevent the procurement of the patent.

"After being so advised, the claimant raised no further objection to the registers being manufactured and used, and tacitly acquiesced in the same.

"There was no agreement or understanding between the parties in regard to royalty or the payment of remuneration for the use of the claimant's invention in the Government's printing and engraving other than such as may be inferred from the preceding conversations. On the part of the claimant it was supposed and understood that he would be entitled to compensation, and that it would be allowed and paid by the Secretary of the Treasury. But on the part of the Secretary and Chief of the Bureau it was supposed and understood that the claimant, being an employé of the Treasury Department, would neither expect nor demand remuneration.

"III. That ever since the issuance of said letters patent the defendant has constructed, and has used continuously, from the date of said letters patent, to wit, March 1, 1870, upon and in connection with plate printing presses used by the defendant in the Bureau of Engraving and Printing and in the Treasury building, the device aforesaid, so patented to the claimant, for the purpose of registering the number of impressions made by the various plate-printing presses, both hand and steam, employed and used by the defendant in the said Bureau of Engraving and Printing and in the Treasury Department building.

"IV. The claimant at the time of the making of his invention before described was assistant master machinist in the Bureau of Engraving and Printing. He was never assigned to the duty of making inventions, and it was not a part of his duty to do so; and the invention before described was made within his own time and exclusively at his own cost, and was a completed invention, properly and sufficiently set forth in drawings when first brought to the Chief of the Bureau, as set forth in finding II.

"V. The defendants were in the undisturbed use of the claimant's invention from July 24, 1878, to July 24, 1884, by attaching such registers to a great number of their presses. During that period the claimant made no objection to such use of his invention, and failed to give notice to the Secretary of the Treasury or the Chief of the Bureau of Engraving and Printing that he would demand royalty or remuneration therefor.

"VI. The average number of presses with claimant's device used by the defendants between July 24, 1878, and July 24, 1884, was 200 per day, covering 1,802 working days."

*Mr. W. W. Dodge* and *Mr. A. A. Hoehling, Jr.,* for appellant:

There were parties competent to contract and there was proper subject matter for contract. Under § 2, act of July 11, 1862, 12 Stat. 532; § 3577, Rev. Stat., the Secretary of the

Treasury had full authority to act through agents or sub-ordinate officers, as indeed the various executive officers must do in such matters from the very nature of the case. The findings of the court below show that the Secretary approved the form of register and directed that such registers be made and attached to the presses in the Bureau.

Thus it appears that this was the immediate and direct act of the Secretary of the Treasury in his official capacity, and with full knowledge of claimant's rights in the premises and within his statutory powers.

Before appellant consented to show his device to the Secretary, and again after he had so shown it (under an assurance of protection), but before consenting to the use of the registers, appellant demanded protection, and declared that he wanted first to secure his patent. Not until protection was a second time promised did he assent to use of his invention. Since then the United States has constructed and used continuously from the date of appellant's patent, the device so patented to him, and was, throughout the entire period covered by this claim, in the undisturbed use of his invention.

A party is not under obligation to renew or repeat notice of his rights. The patent is itself notice to all the world. The rule is the same as in a suit based upon infringement of a patent, instead of upon an implied license to use the patent. *Stearns-Roger Mfg. Co.* v. *Brown,* 114 Fed. Rep. 939, 944; *Sessions* v. *Romadka,* 145 U. S. 29.

There is no pretense of lack of knowledge of appellant's rights, or of lack of notice from him and demand for protection and the protection demanded was against the use of his invention without compensation by the Government and not protection against private parties.

The law implies compensation for property taken to the use of the Government, just as it does in the case of property taken or used by an individual without specific agreement as to compensation. 2 Blackstone, 443; *United States* v. *Burns,* 12 Wall. 246; *Carmmeyer* v. *Newton,* 94 U. S. 225; § 22, Patent

Act, now § 4884, Rev. Stat.; *United States* v. *McKeever,* 14 C. Cl. 396, aff'd by this court without opinion. See 14 Brodix's Pat. Cas. 414, 437; *James* v. *Campbell,* 104 U. S. 356; *United States* v. *Great Falls Mfg. Co.,* 112 U. S. 645; *Great Falls Mfg. Co.* v. *United States,* 124 U. S. 581; *Hollister* v. *B. & B. Mfg. Co.,* 113 U. S. 59; *United States* v. *Palmer,* 128 U. S. 262; *United States* v. *Fire Arms Co.,* 156 U. S. 552; *United States* v. *Lynah,* 188 U. S. 445; *Russell* v. *United States,* 182 U. S. 516.

If a demand for compensation was not made in terms, appellant was by coercion prevented from so making it. The command of a superior to an inferior may amount to coercion. 3 Wash. C. C. 209, 220; 12 Metc. (Mass.) 56; 1 Blatch. C. C. 549; 13 How. 115.

The command of a master to his servant or a principal to his agent may amount to coercion. 13 Missouri, 246; 13 Missouri, 137, 340; 3 Cush. (Mass.) 279; 11 Metc. (Mass.) 66; 5 Mississippi, 304; 14 Alabama, 365; 22 Vermont, 32; 2 Den. (N. Y.) 341; 14 Johns (N. Y.), 119.

A party who fails to make direct demand under such coercion is no more to lose his right to compensation than is he bound to perform a contract procured under like coercion.

That claimant was in Government employ does not alter the case. *Solomons* v. *United States,* 137 U. S. 342: *Gill* v. *United States,* 160 U. S. 426.

Inventing or devising such a register was no part of appellant's duty. He was not assigned to such duty. He did it wholly out of working hours; at his own home; at his own expense, and patented it at his own expense.

The facts found bring the case clearly within the doctrine of the cases cited. The cases relied upon by defendant, and the cases cited by the court below, do not sustain the decision rendered herein. *McClurg* v. *Kingsland,* 1 How. 202; *Pitcher* v. *United States,* 1 C. Cl. 7; *Solomons* v. *United States,* 137 U. S. 342; *McAleer* v. *United States,* 150 U. S. 424; *Lane & Bodley Co.* v. *Locke,* 150 U. S. 193; *Schillinger* v. *United States,* 155 U. S. 163; *Keyes* v. *Eureka Mining Co.,* 158 U. S. 150;

*Kelton* v. *United States,* 32 C. Cl. 314; *Gill* v. *United States,* 160 U. S. 426, 437, can all be distinguished.

Mr. *Special Attorney Charles C. Binney,* with whom *Mr. Assistant Attorney General Pradt* was on the brief, for the United States.

MR. JUSTICE MCKENNA, after making the foregoing statement, delivered the opinion of the court.

The question in the case is whether, on these facts, a contract arose between the United States and the appellant, whereby the United States promised to pay him for the use of his device.

We held in *Russell* v. *United States,* 182 U. S. 516, 530, that in order to give the Court of Claims jurisdiction, under the act of March 3, 1887, 24 Stat. 505, c. 359, defining claims of which the Court of Claims had jurisdiction, the demand sued on must be founded on "a convention between the parties—'a coming together of minds.'" And we excluded, as not meeting this condition, those contracts or obligations that the law is said to imply from a tort. *Schillinger* v. *United States,* 155 U. S. 163; *United States* v. *Berdan Fire-Arms Mfg. Co.,* 156 U. S. 552.

In the case at bar the Court of Claims finds that the appellant "supposed and understood that he would be entitled to compensation, and that it would be allowed and paid by the Secretary of the Treasury;" but it also finds that "on the part of the Secretary and Chief of Bureau (Engraving and Printing) it was supposed and understood that the claimant (appellant) being an employé of the Treasury Department would neither expect nor demand remuneration." That there was "a coming together of minds" is therefore excluded by the findings. And the use of the device cannot give a right independent of the understanding under which it was used. The appellant should have been explicit in his demand. He con-

tends that he was, but manifestly he was not, or the curious opposition between his expectation and that of the Secretary of the Treasury and Chief of Bureau could not have occurred. And we cannot assent to the suggestion that he "was by coercion prevented" from making a demand "in terms" by his subordinate position. How long must we suppose such coercion lasted and that he could have permitted a misunderstanding of his purpose? Six years passed, and the Chief of Bureau with whom the negotiations were made went out of office; another succeeded. No demand was made of either for compensation. Further time passed, and other Chiefs of Bureau succeeded. There was a succession of Secretaries of the Treasury; no demand was made of any of them. His first demand was the petition in this case, over fourteen years from his first interview with the Secretary of the Treasury. This delay cannot be overlooked or interpreted favorably to appellant's contention. He sues for $102,600, and this does not include the royalties that he contends he was entitled to for the first six years the device was used. He claims a royalty of twenty-five cents a day on an average of two hundred machines—that is, $50 a day. He was an employé of the Government at a modest salary, and we cannot conceive there was no inducement in $50 a day to an explicit demand of his rights, or that he was willing to wait, or felt himself coerced to wait, for their realization for fourteen years, and even to lose compensation for six years by the operation of the statute of limitations. The rights of the Government are obvious. The contention of the appellant forces on it a liability that it might not have taken. It was given no election of the terms upon which it would use the register, or whether it would use it at all. Of course, this argument is based on the fact that there was no coming together of the minds of the parties, or, as expressed by the findings of the Court of Claims, that "it was supposed and understood" by the officers of the Government that appellant "would neither expect nor demand remuneration." And this fact distinguishes the case from *Mc-*

*Keever* v. *United States,* 14 C. Cl. 396, affirmed by this court; also from *United States* v. *Lynah,* 188 U. S. 445, and the other cases cited by appellant.

*Judgment affirmed.*

MR. JUSTICE PECKHAM dissents.