## KENDRICK v. UNITED STATES.
### No. 209.

District Court, E. D. Virginia,
at Alexandria.

May 1, 1947.

J. Randall Caton, Jr., of Alexandria, Va., and Justin L. Edgerton, of Washington, D. C., for plaintiff.

Harry H. Holt, Jr., U. S. Atty., of Norfolk, Va., and John T. Casey, Atty., Department of Justice, of Washington, D. C., for defendant.

PAUL, District Judge.

This action is one to recover the sum of $3,250 as damages for the loss of a gasoline-powered boat named the "Shangri La." Jurisdiction is alleged under the provisions of Title 28, Sec. 41, Par. 20 of the United States Code Annotated, commonly known as the Tucker Act.

The complaint asserts in substance that on October 16, 1942, the boat was owned by the plaintiff and was anchored in the Potomac River above the Key Bridge within the boundaries of the District of Columbia. That on the same date the vessel was torn from its anchorage by an Act of God, namely, heavy flood waters which caused a rapid and dangerous current in the river. That on breaking from its anchorage the vessel was swept downstream and lodged against the abutment of an emergency and temporary bridge across the river which had been constructed and was maintained by the United States Army Engineers. The complaint then continues in this language:

"Thereafter plaintiff, after ascertaining that said 'Shangri La' had become so lodged against the abutment of said bridge, attempted to safely secure and/or to move said vessel but was denied permission to do so by armed sentries stationed on the southern end of said bridge who allowed plaintiff only to board said vessel for a short period of time in order to allow plaintiff to remove therefrom certain valuable items of personal property aboard said vessel. Plaintiff was denied permission by said armed sentries to move his said vessel and was denied permission to attach moorings or otherwise to safely secure said vessel.

"Thereafter on October 16, 1942, the duly authorized officers, agents and servants of the United States determined that the said 'Shangri La,' which was then lodged against abutment of said bridge, had become a menace to the safety of the bridge structure by reason of the pressure exerted against said vessel and against said bridge by the flood waters of the Potomac River, and pursuant to said determination, and in furtherance of their duty to protect and maintain said bridge for public uses and purposes, the officers, agents and servants of the United States then and there directed and caused said 'Shangri La' to be removed from its position against said bridge, and in accomplishing this purpose, the officers, agents and servants of the United States caused said vessel to be almost completely destroyed thereby causing the said vessel to sink and the battered hull of said vessel to be carried further downstream in said river.

Plaintiff avers that the aforesaid actions of the duly authorized officers, agents and servants of the United States, as alleged in paragraph 6, damaged his said vessel, the 'Shangri La' to the extent of $3,250.00, and although he has made frequent demands for payment by the United States of just compensation for the taking of his said property for public purposes and use, that neither said sum of $3,250.00, nor any part thereof, has been paid to plaintiff; and that by reason of the acts of the United States through its duly authorized officers, agents and servants, as aforesaid, the said private property of the plaintiff has been taken by the United States for public purposes, and the plaintiff has been deprived thereof, without compensation to plaintiff, to his loss and damage in the sum of $3,250.00."

The defendant has submitted a motion to dismiss the complaint upon the ground that it does not state a cause of action; and, more specifically that the complaint states an action in tort of which this court has no jurisdiction under the Tucker Act.

The statute, 28 U.S.C.A. § 41, subd. 20, under which jurisdiction is alleged need not be stated in full. So far as pertinent it provides that the U. S. District Courts shall have jurisdiction of suits against the United States, concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, *in cases not sounding in tort,* in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable.

The allegations of the complaint are somewhat indefinite, but a fair inference from them is that the plaintiff went to the place where his boat was lodged against the temporary bridge and sought permission to secure the boat to the bridge or in the alternative to attempt to remove it; and that the soldiers guarding the bridge refused to allow him to do either. That these soldiers, or their superiors, believing that the pressure of the boat against the bridge endangered the structure, themselves undertook to remove it under such conditions or in such manner as to cause it to sink. The implication is clear that the plaintiff made certain requests which the agents of the Government refused; and equally clear that the latter pursued a course antagonistic to the interests of the plaintiff and contrary to his desires.

If the acts complained of, as recited in the complaint, give rise to a cause of action, it could only be on the theory of redress for a tort. The statute under which jurisdiction is here invoked clearly limits jurisdiction to cases "not sounding in tort." And the courts have repeatedly held that the statute does not confer jurisdiction in actions founded on a tort. Hill v. United States, 149 U.S. 593, 13 S.Ct. 1011, 37 L.Ed. 862; Russell v. United States, 182 U.S. 516, 21 S.Ct. 899, 45 L.Ed. 1210; Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108; Bigby v. United States, 188 U.S. 400, 23 S.Ct. 468, 47 L.Ed. 519; Harley v. United States, 198 U.S. 229, 25 S.Ct. 634, 49 L.Ed. 1029.

While the plaintiff does not allege either an express or implied contract to pay for his boat, growing out of the circumstances recited, it is evident that it is upon the theory of an implied contract that he seeks to have this court take jurisdiction. But the complaint alleges no facts upon which to rest such a theory. There is no allegation that the boat was dealt with in any manner redounding to the defendant's benefit, which might raise an implied promise to pay for its use. There is no suggestion of a course of action agreed to or acquiesced in by both parties—nothing that can be construed as even an implied meeting of minds, the essential to a contract.

There have come before the courts a number of cases requiring determination of the question of whether the asserted liability of the United States rested on an implied contract or was for a tort, and the facts of particular cases have sometimes made this determination difficult. But here there seems to be no "convention between the parties * * * 'a coming together of minds,'" which the Supreme Court, in Russell v. United States, 182 U.S. 516, 530, 21 S.Ct. 899, 904, 45 L.Ed. 1210, laid down as a requisite to an action on contract—even an implied one. On the contrary the complaint here asserts (by any reasonable construction of its language) that the defendant, contrary to plaintiff's request, wrongfully refused to return the boat to plaintiff or to allow him any control over it, but on the contrary and against the plaintiff's will retained it under defendant's control and destroyed it. The situation here is aptly described by language used in Schillinger v. United States, 155 U.S. 163, at page 169, 15 S.Ct. 85, at page 87, 39 L.Ed. 108, where, in differentiating between implied contracts and torts, it is said:

"That this action is one sounding in tort is clear. It is in form one to recover damages. The petition charges a wrongful appropriation by the government, against the protest of the claimants, and prays to recover the damages done by such wrong. The

successive allegations place the parties in continued antagonism to each other, and there is no statement tending, to show a coming together of minds in respect to anything."

The most that the complaint alleges is that the boat, due to no fault of either party, but due to an act of Providence, was carried onto or against the property of the defendant and that the latter, having come into custody of the boat, converted the same. But conversion is a tortious act for which the common law remedy was by an action in trespass, the traditional form of redress for a tort. There is, indeed, such a thing as waiving a tort and suing in assumpsit; but it cannot be assumed that Congress, having specifically excepted from the operation of the statute cases "sounding in tort" intended to permit the statute to be evaded merely by giving a different name to what is in reality a tort. Certainly not, when there is no allegation upon which to rest a contract either express or implied.

It is true that plaintiff refrains from denominating the act of the defendant's agents as "wrongful" or "negligent" or by any other term implying an unjustified or tortious act. But the omission of such words does not change the essential nature of what is charged, namely, that the agents of defendant retained the boat against the request and the desires of the plaintiff and destroyed it.

In an effort to avoid the inhibition of the statute the plaintiff, in his argument opposing the motion to dismiss, states:

"Plaintiff has not alleged, and does not now contend, that the officers and agents of the United States acted wrongfully, improperly or negligently in (a) refusing to allow plaintiff to move his boat, or in denying plaintiff permission to attach moorings or otherwise to safely secure his boat * * * or (b) in making the determination that for the safety of the bridge structure that the boat must be destroyed. * * * Plaintiff concedes that the officers of the United States had the right and duty to adopt this course of action, and has no quarrel with their exercise of judgment which led them to destroy the boat. The claim, accordingly, does not sound in tort, as no tortious act or conduct is charged, but is based on an implied contract to pay to plaintiff just compensation for the property of the plaintiff so taken and appropriated * * * for public uses and purposes."

The difficulty about this argument is that it presents a different situation to that alleged in the complaint; and it is the allegations of the complaint which have been questioned and upon which the court must act. It may be that the plaintiff can allege a state of facts which can bring his case within the jurisdiction of the court, but so far he has not done so. The complaint before the court, by any construction which I am able to give its language, alleges a tort —if it alleges any cause of action.

It must be said that I do not see how the plaintiff can establish a cause of action in contract even upon the theory which he argues in his brief, unless he can show an express promise to pay for his boat. Plaintiff admits that the vessel came onto the property of the defendant through no fault or act of defendant. If then the presence of the boat against defendant's bridge was determined to be an imminent danger to the public safety which required destruction of the boat, and if this determination was wisely and properly exercised and was one as to which plaintiff has no complaint, it is difficult to see where there arose any implied promise to pay for the boat. This is not a case where the defendant, having come into possession of a boat, used it for its own advantage and benefit under conditions implying a promise to pay for its use. What happened here was that, through no act of defendant, its property was invaded by an instrumentality constituting an imminent and serious danger to the property of defendant and to the public safety, and the defendant, with no other course open to it, destroyed the dangerous instrumentality in order to protect its own property and the public safety. Under such conditions no implied promise to pay for the boat would arise.

If any express promise was made to plaintiff to pay him for his boat, his action should, of course, be rested on that. The motion to dismiss the complaint will be granted. However, if the plaintiff can state

a cause of action of which the court can take jurisdiction he should not be foreclosed from doing so, and the dismissal will be without prejudice to his right to do so.