Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff, E. W. Bliss Co., brought its action against the United States to recover several sums aggregating $255,000, claimed to be due as “royalties” upon certain patented inventions or compensation for their use by the United States. The defendants have demurred to the amended petition, and have moved to strike separate portions of the same.
The objections presented are (1) that the amended petition does not show a contract between plaintiff and defendant, (2) that it seeks a recovery of damages sounding in tort, or (3) that the case is one of infringement and plaintiff is a mere licensee of the described patents.
Prior to the act of June 25, 1910, 36 Stat., 851, the Court of Claims had jurisdiction in cases involving patents where the claim was based upon express or implied contract and had no jurisdiction in cases claiming compensation for infringement. That act materially enlarged the court’s jurisdiction where the alleged infringement was subsequent to the passage of the act. Certain limitations appear in the act which are not material in the present case.
It is important to observe the distinction between actions for the recovery of royalties or sums claimed to be due for the use by the United States under contract, express or implied, and actions for infringement. There are defenses which are open to the Government when charged with infringement which can not be urged when the action is upon express contract. In the former class the validity of the patent, or whether the patented device exhibits novelty, may be a vital question, whereas in an action upon an express contract no such question is involved.
The court’s jurisdiction in matters of contract is defined by section 145 of the Judicial Code. It has no jurisdiction of damages in cases “ sounding in tort.” It has been definitely settled that the statute inhibits jurisdiction in the court of that class, sometimes called quasi contracts, which involve tort or a breach of a mere duty growing out of the relation of the parties as distinguished from a breach of contract made between them, and which in some jurisdic *54 tions are enforceable in actions ex contractu. Where the claim arises out of tort it is not permissible for the plaintiff to waive the tort and sue in assumpsit in this court. These questions have been settled by decisions of the Supreme Court.
In Russell v. United States, 182 U. S., 516, an action had been brought upon an alleged implied contract to pay for the use of a patented invention, and it was held under the facts found that no contract could be implied, and that if petitioners had suffered any injury it had been through the infringement of their patent, not by a breach of contract. “For the redress of an infringement the Court of Claims has no jurisdiction.” That case was decided prior to the said act of June 25, 1910. It was said in Russell’s case:
“ This court has held that under the act of March 8, 1887 (brought forward as section 145 of the Judicial Code), defining claims of which the Court of Claims had jurisdiction, the court had no jurisdiction of demands against the United States founded on torts. Schillinger v. United States, 155 U. S., 163; United States v. Berdan Fire-Arms Co., 156 U. S., 552. In other words, to give the Court of Claims jurisdiction, the demand sued on must be founded on a convention between the parties — ‘ a coming together of minds.’”
A reason for the distinction between the rights of the Government and of an individual defendant when sued upon an alleged implied contract is stated to be that “it is the prerogative of a sovereign not to be sued at all without its consent or upon such causes of action as it chooses. It has not chosen to be sued in actions sounding in tort. This court has declared as we have seen.” Op., p. 533.
It was said in Harley's case, 198 U. S., 229, 234:
“ We held in Russell v. United States, 182 U. S., 516, 530, that in order to give the Court of Claims jurisdiction under the act of March 3, 1887, 24 Stat., 505, ch. 359, defining claims of which the Court of Claims had jurisdiction, the demand sued on must be founded on a convention between the parties ’ — ‘ a coming together of minds.’ And we excluded as not meeting this condition those contracts or obligations that the law is said to imply from a tort. Schillinger v. United States, 155 U. S., 163; United States v. Berdan Fire-Arms Mfg. Co., 156 U. S., 552.”
*55 To tbe same effect is Juragua Iron Co. v. United States, 212 U. S., 297, 309. The cases are reviewed in Bighg’s case, 188 U. S., 400, where the petitioner sought to fix a liability upon the Government for personal injuries sustained by the petitioner in an elevator owned by the Government and operated by one of its employees. The theory advanced to sustain the action was that of an implied contract. The court held that the action was necessarily one sounding in tort, and that there was no contract, express or implied, growing out of the facts which could be made the basis for jurisdiction under the Tucker Act of March 3, 1887. It was said by the court, p. 409:
“A party may in some cases waive a tort; that is, he may forbear to sue in tort and sue in contract, where the matter out of which his claim arises has in it the elements both of contract and tort. But it has been well said that “ a right of action in contract can not be created by waiving a tort, and the duty to pay damages for a tort does not imply a promise to pay them upon which assumpsit can be maintained.’ Cooper v. Cooper, 147 Mass., 370, 373.”
The above citations make it clear that it is not every use by the Government of a patented invention that gives rise to an action upon an implied contract to pay for such use. It is only when the facts alleged establish an express or implied contract to pay for such use that the petition is cognizable in this court, aside from the act of 1910. Farnham case, 240 U. S., 537, 540.
As above suggested, the act of June 25,1910, 36 Stat., 851, confers jurisdiction on this court in certain cases of infringement. It may be that the court’s jurisdiction has been further enlarged by later acts of Congress which are not material in this suit.
The purpose of the act of 1910 was to provide a forum where the Government could be sued for infringement by parties bringing themselves within the provisions of the act, “ and the nature and character of the defenses which the statute prescribes may be made by the United States to such an action when brought.” Crozier v. Krupp, 224 U. S., 290, 305. The act prescribes that the Government when sued “ may avail itself of any and all defenses, general or special, which might be pleaded by a defendant in an action for in *56 fringement as set forth in Title 60 of the Devised Statutes or otherwise.” The act by no means obliterates the distinction between actions based upon contract, express or implied, and actions for infringement. It may accentuate the difference by a recognition thereof inherent in the purpose of the act to afford a measure of relief to owners of patented inventions which they could not obtain prior to the passage of the said act. Crosier v. Krupp, supra.
The act of June 25,1910, provides that whenever an invention described in and covered by a patent of the United States shall hereafter be used by the United States “ without license of the owner thereof or lawful right to use the same,” such “ owner ” may recover reasonable compensation for such use by suit in the Court of Claims with certain limitations, not material here, contained in the act. It is well settled that a mere licensee can not sue for infringement of a patent.
In Waterman v. Mackenzie, 138 U. S., 252, it is said:
“ Every patent issued under the laws of the United States for an invention or discovery contains ‘ a grant to the pat-entee, his heirs and assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States and the Territories thereof.’ Rev. Stat., sec. 4884. The monopoly thus granted is one entire thing, and can not be divided into parts, except as authorized by those laws. The patentee or his assigns may, by instrument in writing, assign, grant, and convey, either, first, the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or, second, an undivided part or share of that exclusive right; or, third, the exclusive right under the patent within and throughout a specified part of the United States. Rev. Stats., sec. 4898. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement. Rev. Stat., sec. 4919; Gayler v. Wilder, 10 How., 477, 494, 495; Moore v. Marsh, 7 Wall., 515. In equity, as at law, when the transfer amounts to a license only, the title remains in the owner of the patent; and suit must be *57 brought in his name, and never in the name of the licensee alone, unless that is necessary to prevent an absolute failure of justice, as where the patentee is the infringer and can not sue himself. Any rights of the licensee must be enforced through or in the name of the owner of the patent and perhaps, if necessary, to protect the rights of all parties joining the licensee with him as a plaintiff. Rev. Stat., sec. 4921. Littlefield v. Perry, 21 Wall., 205, 228; Paper Bag cases, 105 U. S., 766, 771; Birdsell v. Shaliol, 112 U. S., 485-487. And see Renard v. Levinstein, 2 Hem. & Mil., 628.”
The language of section 4919 of the Bevised Statutes authorizes suit for infringement “ in the name of the party interested, either as patentee, assignee, or grantee.” The act of 1910 authorizes suit by the “ owner.” It becomes necessary, therefore, to determine whether the plaintiff in this suit had such title as “ owner ” as would authorize a suit for infringement against the United States.
The several transactions alleged in the petition upon which the liability of the Government is rested may be grouped into three classes: (1) An alleged purchase by the Government of 50 Whitehead torpedoes containing the “ super-heaters” covered by the Armstrong patents, (2) the purchase by the Government at three different times in 1908 and 1911 from Whitehead & Co. of Whitehead torpedoes containing the said superheaters to the number of 360, and (3) the making by the Government of an additional 100 of said superheaters. We speak of the allegation as referring to the “ superheaters ” for brevity, and do not overlook the fact that the averment is that the Government purchased torpedoes, or has made or is making superheaters which contain the patented superheaters and patented improvements thereon or “ some of them.” In the view we take of the case, it is not necessary that we examine the sufficiency of the allegations in their designation of what was purchased or made by the Government. We shall assume that the plaintiff intends to claim that the Government is liable in contract or for infringement because of its purchase or manufacture or use of the device covered by the Armstrong patents or the improvements thereon, and for brevity we call the device “ superheaters.”
*58 By the exhibit to the amended petition, Appendix A, the plaintiff shows what his interest is. The averments of the petition must be read in the light of said exhibit which purports to be an agreement made on the 10th day of April, 1905, between the Armstrong Co. and the plaintiff. It recites that the Armstrong Co. owns an invention under an English patent for “ improvements in or relating to the method and means for increasing the work obtainable from a charge of compressed air, more particularly applicable to the propulsion of torpedoes and the like ”; that the Armstrong Co. was proposing to apply for a patent in the United States covering the same subject matter “ and desires to grant to the Bliss Co. an exclusive license to use the said invention in connection with the Bliss-Leavitt torpedo manufactured by the Bliss Co. upon the terms and for the purposes hereinafter expressed, and the Bliss Co. desires to acquire such license.” The agreement proceeds to grant to the Bliss Co. and their assigns “the sole and exclusive license and authority to use and exercise the said inventions under the said letters patent for the whole period of the term to be granted by the said letters patent, and any extension of the said term in the manufacture of apparatus for heating compressed air for the purpose of propelling Bliss-Leavitt torpedoes wherever sold by the Bliss Co. u and ’Whitehead torpedoes sold only to the United States Government.”
Whether the transfer mentioned is an assignment or a license does not depend upon the name by which it is called, but upon the legal effect of the contract. Waterman v. Mackenzie, supra. The petition shows that the E. W. Bliss Co. was the maker and owner of the Bliss-Leavitt torpedo and it is apparent that an important element in the consideration to the Armstrong Co. for granting said rights was the concession that the Bliss Co. would not “ either directly or indirectly oppose or in any way hinder the granting ” of letters patent to the Armstrong Co. in the event the Armstrong Co., in their application for a United States patent, should describe the invention as an improvement in the method and apparatus specified in United States patents theretofore granted to Frank M. Leavitt. A further consideration was that the Bliss Co. would pay $25.00 as royalty *59 for each torpedo fitted with the apparatus manufactured under said patents. There is a provision in paragraph nine of the agreement that the Armstrong Co. “ shall not at any time during the continuance of this license use or exercise the said invention * * * or grant any license to any other person or persons whomsoever to use or exercise the same * * * for the purpose of propelling Bliss-Leavitt torpedoes or Whitehead torpedoes so far as such Whitehead torpedoes may be intended for sale to the United States Government.”
It appears from the amended petition that Whitehead & Co. is a foreign corporation, from whom the defendant has at various times purchased torpedoes. It does not appear that Armstrong & Co. had any interest in Whitehead & Co. or in torpedoes made by that company. It is averred that the defendant purchased from Whitehead & Co. 130 torpedoes on or about June 7, 1908, 180 torpedoes on or about March 29, 1911, and 50 torpedoes on or about October 25, 1911, all of which torpedoes, it is averred, contained the “ patent superheater inventions and improvements.” These are referred to in the amended petition and will be by us referred to as superheaters. It is also averred that in addition to said purchases from Whitehead & Co. the defendant has made since April 15, 1913, “ 100 superheaters in the United States” which contain said patented superheater and certain patented improvements thereon “or some of them,” mentioned in the amended petition.
It is further averred that the Armstrong Co. licensed Whitehead & Co. “ to use and exercise the said inventions ” under the English patents, “said license having been expressly subject to the rights of petitioner under” said Exhibit A, and that Whitehead & Co. informed the Bureau of Ordnance of the United States Navy that they were not at liberty to sell Whitehead torpedoes to the United States containing the so-called Armstrong superheater without the express permission of Bliss & Co.
The amended petition avers that the plaintiff “ now is the owner as aforesaid of all the rights and privileges granted, or intended to be granted, and secured in and by said letters patent, and has been such owner since the granting of said *60 respective patents,” referring thereby to said superheater patents and to certain other patents mentioned in the amended petition and designated as the Sodeau inventions. The averment of ownership must be treated as a conclusion of the pleader inasmuch as the question of ownership must be determined from the written agreement attached to the petition. While the agreement grants in terms a license “ to use and exercise ” the inventions, it is averred in the petition that the effect of the written instrument was to grant the sole and exclusive license and authority “ to make, use, and vend ” the said inventions, and it was explained in argument that “use and exercise” is an expression in the English patent conveyancing that has the same meaning as “ make, use, and vend ” have in American patent law.
Except for the purposes of the demurrer and motion in this case, we express no opinion as to whether the construction of said words given them by plaintiff is correct when the rights of third parties are involved. London Assurance Co. v. Companhia, etc., 167 U. S., 149, 160; Scudder v. Union National Bank, 91 U. S., 406; Liverpool Co. v. Phoenix Insurance Co., 129 U. S., 397, 446, 453. But assuming that the plaintiff’s construction is correct, the question before us is whether the right granted by the Armstrong Co. to the Bliss Co. of the sole and exclusive license and authority to make, use, and vend superheaters and other improvements in connection with Whitehead torpedoes “ sold only to the United States Government” amounts to such a transfer of ownership as will sustain an action by the Bliss Co. under the act of 1910.
For the purposes of this suit it must be conceded that the ' Whitehead torpedoes were not made in the United States. It is averred that those which were purchased were acquired from a foreign corporation, namely, Whitehead & Co. It is apparent that the whole patent was not assigned, and that an undivided part or share was not assigned, and referring to the rules announced in Waterman v. MacJcenzie, supra, does the grant amount to an exclusive right under the patent within and throughout .a specified part of the United States ? We think not. While the right to use the superheaters in the Bliss-Leavitt torpedoes, the patents to which belonged to the
*61 Bliss Co., is granted, the grant, so far as any other torpedoes are concerned, is limited to Whitehead torpedoes “ sold only to the United States Government.” The right of the Armstrong Co. to sell its superheaters to any other company, foreign or domestic, which should manufacture torpedoes, except Whitehead & Co., is by the agreement manifestly reserved to the Armstrong Co. Any person having the right to make torpedoes could purchase superheaters from Armstrong & Co. for use therein and could sell them anywhere to any person or Government and to the United States Government, except only by the terms of the agreement the Whitehead torpedoes and the Bliss-Leavitt torpedoes. There is nothing in the agreement which restricts the manufacture in the United States of the superheaters by the Armstrong Co. or its assignees. That company can make them or authorize them to be.made at one or more factories or plants in the United States and can sell them or authorize them to be sold in the United States to any other Government in the world than the United States Government, except in connection with Bliss-Leavitt or Whitehead torpedoes. Any party having the lawful right to make torpedoes can be authorized by the Armstrong Co, to make, use, or vend the superheaters in the United States and to dispose of the same in connection with other torpedoes than the Bliss-Leavitt or Whitehead to any person or Government. The sole limitation upon the right of the Armstrong Co. in said regard is that it will not authorize any other party than plaintiff to make, use,' and vend the superheaters in connection with Whitehead torpedoes sold to the United States Government. The stipulation in the contract is analogous to a covenant not to sue the Bliss Co. for infringement if it make, use, and vend the superheaters in connection with its own torpedo or in connection with the Whitehead torpedo when the latter is sold only to the United States Government. There is no territorial limitation upon the making of torpedoes or the making or using or vending of superheaters.
-
While the patentee may assign his exclusive right within and throughout a specified part of the United States, and upon such an assignment the assignee may sue in his own name for an infringement of his rights, yet in' order to *62 enable him to sue the assignment must undoubtedly convey to him the entire and unqualified monopoly which the patentee held in the territory specified, excluding the patentee himself as well as others. Any assignment short of this is a mere license. Gaylor v. Wilder, 10 How., 477, 494. The grant to Bliss & Co. was a mere license. This conclusion is fortified by the provision in the agreement that in case the letters patent “ shall be infringed so far as regards the license to use the same as hereby granted ” the Armstrong Co. would take all necessary proceedings for protecting and defending the same, and in default in their doing so the Bliss Co. could determine the agreement. A further provision is that the Bliss Co. will pay royalties of $25 to the Armstrong Co. The instrument, therefore, contemplated a license and not an undivided part or share in an exclusive right nor an exclusive right within a specified part of the United States. Waterman v. Mackenzie, 138 U. S., 252; Walker on Patents, 296; Gamewell v. Brooklyn, 14 Fed., 255; Jaros Co. v. Fleece Co., 60 Fed., 623.
It follows that being a mere licensee the plaintiff can not sue for infringement, and it is manifest that the claim on account of the manufacture by the United States of 100 super-heaters “which contain said patented superheater and said patented improvements or some of them ” is a claim for infringement.
The claim for the 360 torpedoes “ containing some or all of said superheater inventions and improvements ” is not based upon contract, express or implied. The allegations of the amended petition fall far short of showing any contract between the plaintiff and the United States with reference to them. It is specifically alleged in the ninth paragraph that “ petitioner has never consented to the use of the said patented inventions or said patented improvements thereon, or any of them, by defendants without payment of said royalty of $500.” If that averment be confined to the 50 Whitehead ^torpedoes mentioned in said paragraph, it is yet plain that the plaintiff fails to show that any contract was made or can be implied with reference to said 360 torpedoes or superheaters. It is not averred that defendants pur *63 chased them with plaintiff’s consent or permission. The exact contrary is to be inferred. The defendants dealt with Whitehead & Co., not in recognition of any rights of the plaintiff but in antagonism to and disregard of them. “ There was no point in the whole transaction, from its commencement to its close, where the minds of the parties met or where there was anything in the semblance of an agreement.” Schillinger case, 155 U. S., 163, 170. “And the use of the device can not give a right independent of the understanding under which it was used.” Harley case, 198 U. S., 229, 234. A claim for compensation for an authorized use is not a claim for an infringement. The two things are totally distinct. Russell case, 182 U. S., 516, 531. Where the facts alleged show an unauthorized use and a disregard of plaintiff’s claims there may be an infringement, but no contract can be implied therefrom. Any right which the plaintiff had was such as its contract with the owner of the patents gave it, and that, as we have seen, was a mere license. No right in the patents themselves passed thereby. The plaintiff was not the “ owner ” of the patents in the sense that that term is used in the act of 1910. The Government therefore did not use any patent belonging to plaintiff. It refused to acknowledge a right in the plaintiff to fix a price at which the torpedoes and superheaters combined could be purchased, and proceeded to buy them from a party who had the right to sell the torpedoes, and who, according to the averments of the petition, also had the right to sell the superheaters to other Governments than the United States. If there was any element of tort in the transaction, that fact can not be made the basis of an action ex contractu. The plaintiff being a mere licensee and not the owner of the patents, can not sue for infringement or maintain its action on account of the said 360 superheaters.
An additional reason (applicable at least to the 50 super-heaters mentioned in section 9 of the amended petition and the 130 superheaters alleged to have been purchased in 1908) for holding that plaintiff can not sustain a claim on account of the use of these superheaters by the Government is found in the fact that the act of 1910 does not authorize a recovery of compensation based on the use by the United States of *64 any article “used by or in the possession of the United States ” prior to the enactment of the statute.
As to said 50 superheaters purchased from Whitehead & Co., the plaintiff apparently seeks to recover upon contract. The defendants by their demurrer challenge the sufficiency of the petition in its allegations as to the agreement upon which plaintiff apparently relies, namely, an agreement between plaintiff and the Chief of the Bureau of Ordnance made in June 1907. Construing the pleading more strongly against the pleader, it is manifest that the averments relating to the matter of contract are not as definite as they could be made if,'in fact, the suggested agreement was entered into. If Whitehead & Co. informed the defendants that it could not sell the superheaters in connection with the Whitehead torpedoes without the express permission of plaintiff because of the license held by plaintiff, and thereupon the defendants’ officers applied to the plaintiff for such permission to buy the superheaters from Whitehead & Co., and assuming as valid plaintiff’s claim under Appendix A, and as a condition upon which the purchase would be made, the plaintiff and the defendants’ officers agreed that a limited number of Whitehead torpedoes, with the super-heater attached, would be purchased from Whitehead & Co., and the Government would pay plaintiff a royalty on the same, the granting of the permission to the Government to make the purchase would furnish a sufficient consideration to sustain the promise of the Government to pay the stated royalty. Hendrick v. Lindsay, 93 U. S., 143, 148.
If plaintiff had no lawful right to grant a permit to Whitehead & Co. to sell the invention to the Government, or if there were any misrepresentation of fact, a different question would arise. While, if inference be allowed, it may be inferred that plaintiff means to allege that permission was granted upon the condition mentioned to purchase superheaters, the allegation as framed is that the Government “ might ” purchase not more than “ 100 torpedoes ” from Whitehead & Co., the amount of the royalty for the use therein of said superheating inventions to be later settled and agreed upon by the defendant and petitioner,'thus failing to specifically aver a permission to buy the super- *65 heaters as well as the torpedoes. Of course, it was not necessary for plaintiff to consent to the purchase of Whitehead torpedoes. The concluding averment in paragraph 9 of the amended petition, to the effect that petitioner “has never consented to the use ” of said inventions by defendants without the payment of a royalty of $500 each, appears inconsistent with the allegation that an amount was to be later agreed upon.
We express no opinion at this time as to the right of plaintiff to recover compensation if the fact be that plaintiff and defendants’ officer agreed that the amount of royalty to be paid plaintiff would be agreed upon later. It is manifest from the allegations that plaintiff did not sell the super-heaters and that it authorized the Government to buy and Whitehead & Co. to sell them. In acquiring them under such a permit, the Government got no property belonging to plaintiff. It got a permit to purchase property from another. As to whether the plaintiff can have the court fix the compensation under such circumstances, and in view of plaintiff’s license agreement, when it was agreed that the compensation (in the shape of royalty) would be later agreed upon by the parties themselves and they have not so agreed, is a question that is left open.
As under a phase of the case mentioned below the plaintiff will be required to make more specific and definite its averment relative to the said purchase, the court withholds any ruling upon the demurrer upon the contract phase of the case referring to the 50 superheaters and will afford the plaintiff an opportunity to amend and state more definitely, as it may be advised, the terms of any contract relied upon and relating to said 50 superheaters.
Another question presents itself, however, and that is one of limitation. The statute of limitations is jurisdictional in this court and need not be specially pleaded. Wardwell case, 172 U. S., 52. It is manifest that the allegation that the 50 torpedoes and superheaters were brought into the territory of the United States “ subsequent to June 1, 1908,” does not fix the date of their purchase under the agreement mentioned. The agreement itself was “on or about June *66 17, 1907,” and in November, 1907, there was correspondence between the parties wherein the bureau desired “ to take the subject of royalties under consideration for final settlement.” If this correspondence had no reference to the royalties on the SO superheaters theretofore authorized to be bought, the petition at least fails to negative such a conclusion. With much particularity the. petition sets forth a number of purchases by the Government of Bliss-Leavitt torpedoes with superheaters at divers times and payment therefor, the first purchase being under contract of June 4,1908. But the claim here is for superheaters in Whitehead torpedoes. Construing the pleading more strongly against the pleader, as we might because of its vagueness be justified in doing, the conclusion could be reached that the purchase of the 50 superheaters in question occurred long before June 1, 1908, notwithstanding the indefinite date upon which they were “ brought into the territory of the United States.” Suit was instituted in this court by the original petition filed May 29, 1914, and therefore only a few days prevents the bar of the statute if it commenced to run on June 1, 1908. It did commence to run when the claim first accrued, and “ a claim first accrues, within the meaning of the statute, when a suit may first be brought upon it, and from that day the six years’ limitation begins to run.” Rice case, 122 U. S., 611, 617.
Section 165 of the Judicial Code provides that where it appears to the court in any case that the facts set forth in the petition do not furnish any ground for relief, it shall not authorize the taking of any testimony therein. In view of this statute, as well as of what has been said about the vagueness of the petition, we think the proper course is to require the plaintiff to make more specific the allegations relative to the alleged agreement and date of purchase of the 50 superheaters instead of construing the averments as we have indicated could be done. This course is justified by the fact that if the claim is really barred the parties should not be subjected to the expense and delay frequently incident to patent litigation.
An order will be entered sustaining defendants’ demurrer and motion to strike as to all items of claim for compensa *67 tion set up in the amended petition except the claim involved in the purchase of 50 Whitehead torpedoes containing superheaters. As to the latter claim the plaintiff will be required to make its petition more specific.
Hay, Judge; DowNey, Judge; BARNEY, Judge; and Booth, Judge, concur.