## DIVERSEY CORPORATION v. MERTZ.

**No. 14339.**

District Court, N. D. Illinois, E. D.

Jan. 31, 1936.

Russell Wiles and Charles J. Merriam, both of Chicago, Ill., for plaintiff.

John J. McLaughlin and Sidney Wallenstein, both of Chicago, Ill., for defendant.

LINDLEY, District Judge.

Plaintiff brought this suit for infringement of two patents, Adler, No. 1,734,706, and Kochs, No. 1,962,821, issued to plaintiff as assignee of the respective applicants.

Defendant asserts invalidity and denies infringement. He files a counterclaim in which he avers that the Adler invention is his and should be assigned to him. In view of the defense that Adler was not the inventor and the issue presented by the counterclaim, I shall consider, first of all, the question of invention by Adler.

Defendant was formerly plaintiff's vice president and general sales manager and its confidential agent. Adler was hired by the Victor Chemical Works, which owns plaintiff, to invent, and was bound to assign any invention he made to his employer.

The patents in suit deal with chemical compounds and have to do with the method, and a chemical product, utilized in cleansing tin containers, such as milk cans. The special utility claimed arises from the quality possessed by the patented compound of cleaning tin with alkaline detergents without resulting corrosion of the tin.

Before the filing of the application for either of the patents, Victor produced chlorosol, a mixture of trisodium phosphate and sodium hypochlorite, possessing sterilizing properties similar to those of chlorine, which had been used for cleaning and sterilizing glazed vessels, glass containers, and similar articles. Prior to 1925, no attempt had been made to utilize it in cleaning tin without corrosion of the same.

Early in 1925, Adler and his associates first discovered that chlorosol did not corrode tin and immediately began to speculate on the cause of this result. Adler was a skilled chemist, knew that sodium hypochlorite is a common oxidizing agent, and, at first, assumed that its oxidizing character made it an inhibitor of corrosion of tin. This thought carried him further to the possibility of using other and cheaper oxidizing agents. No further progress appears until some weeks before November 2, 1925. Kochs, an employee of Victor, and Mertz discussed the possible market for a noncorrosive cleaner cheaper than chlorosol. On November 2, 1925, Mertz wrote that it seemed probable that sodium hypochlorite owes its corrosion inhibiting effect to its oxidizing character; that oxidizers generally include sodium bichromate and sodium perborate, which should work successfully, and that there would probably be a market for a cheaper noncorrosive compound than chlorosol. This was in accordance with Adler's thought that oxidizers generally might successfully work in the combination; but he had not appreciated that there was a possible profitable market. He testified that within a week thereafter he produced the compound of his patent.

On November 11, 1925, defendant, speaking as an employee of plaintiff, wrote Kochs, saying: "We deem it advisable that you (Victor) should immediately file patent to cover the use of bichromate with trisodium phosphate," and on December 19, 1925, he wrote urging that the patent be taken out in the name of plaintiff, instead in that of Victor. These letters indicate rather clearly that Mertz was not at that time claiming to be the inventor. Rather, they indicate that Adler, a Victor employee, was the inventor, inasmuch as defendant first suggested that Victor should apply.

In January, 1926, Mertz and Adler consulted counsel, and the preponderance of the evidence is that at that time the direct question was put to Adler and Mertz as to which was the inventor. Adler said that he was the inventor. Mertz made no protest, and the applications were prepared and filed in Adler's name. From these facts, therefore, it appears that Adler was the real inventor of the compound utilizing the effectiveness of sodium bichromate to inhibit corrosion of tin.

Of some interest in this connection are these facts: In his letter of November 2, Mertz suggested that any oxidizer when included in the detergent compound, would work as an inhibitor. Later development proved the fallacy of this theory. Certain oxidizers inhibit corrosion and others do not; and some agents, not akin to oxidizing agents, such as sodium sulphite, are successful and others are not. It is clear that discovery in this field arises, not from theory, but from observation and experiment. In chemical compound inventions, prediction is futile. Experiment is all essential, and the successful test of a new agent, producing a sought for new result, is a new discovery, unless its use is taught by prior art. It was the discovery that chromates would work successfully, which produced invention by Adler. The theory that all oxidizers would accomplish the desired result was erroneous, and, therefore, was discarded.

The rough draft of application presented to counsel in January, 1926, attempted to cover all oxidizers, and Mertz and Adler then learned that such claims would not be allowed by the Patent Office, because, first, the use of one member of the claim class, chlorosol, was old, and, second, no

class can be patented as such unless all its members work, and inasmuch as all oxidizers would not work, such claims would be invalid.

The evidence, therefore, indicates that the only contribution of Mertz was the suggestion of a theory which proved to be false, to the effect that all classes of oxidizers would work, whereas what Adler discovered, as the result of experiment and test, and what is embraced in his patent is that certain of the class do work. Mertz, as promulgator of a falacious theory, was not the inventor. Patents are not granted for false theories; they issue for inventions growing out of discoveries of true facts. Corollary to this conclusion is the fact that in chemistry, invention results from empirical or experimental discoveries. Thus in United Chromium v. International Silver (D.C.) 53 F.(2d) 390, 393, affirmed 60 F.(2d) 913 (C.C.A.2), the court said: "The prior publications and prior patents relied on by defendant do not teach the patentee's invention. On the contrary, they emphasize the fact that Fink's 'regulation' is one of the missing links in all prior chromium-plating efforts. Defendant attempts to supply this link from other metal plating arts. But, inasmuch as a chemical action is involved here, analogy does not go a long way, because, while one can predict with confidence in mechanics in some instances, and in some cases where mathematics can be applied, in chemistry, one almost entirely fails. In chemistry, one cannot anticipate a result. A result may be obtained only by experiment." See, also, Corona Chem. Co. v. Dovan Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L. Ed. 610; Tyler v. Boston, 7 Wall. (74 U.S.) 327, 19 L.Ed. 93; General Electric Co. v. Laco-Phillips Co., 233 F. 96 (C.C.A.2); Naylor v. Alsop Process Co. (C.C.A.) 168 F. 911; Stevens v. Keating, 2 Web.Pat.Cas. 181; Toledo Rex Spray Co. v. California Spray Chemical Co. (C.C.A.) 268 F. 201. It may be that if one suggests a line of tests the results of which prove to be 100 per cent correctly predicted, invention will have occurred, as defendant here insists. But that is not the present case. We cannot meet an invention by art which suggests a line of tests, some of which experiment later shows would produce the result and some of which similar experiments show would not.

Defendant testified that he made some tests after November 2, 1925, and before November 11, 1925, upon trisodium phosphate and sodium dichromate. Other witnesses fixed the time as several weeks before November 11th. The records show no purchase of sodium dichromate before December, 1925. At that time Mertz ran a test to confirm Adler's chart. Mertz himself testified that he had a clear recollection of only one test of dichromate. Apparently, in view of the facts related, he is confused in the date of the test.

Furthermore, apparently defendant is estopped to claim now that he is the true inventor. As has been pointed out, Adler was employed by Victor to invent, and Mertz was a fiduciary agent of Diversey and had written to Victor that it or Diversey should own the invention and the patent thereon. At the time of the conference in January, 1926, he acquiesced in the statement of Adler that the latter was the inventor. The facts are such that Mertz was in fact a constructive trustee for Diversey of any patent if he made the invention thereof. Beecroft and Blackman Inc. v. Rooney, et al. (D.C.) 268 F. 545; Barr Car Co. v. C. & N. W. R. R., 110 F. 972 (C.C.A.7th); Bestwall Mfg. Co. v. United States Gypsum Co., 290 F. 798 (C.C.A.7th).

In considering the question of anticipation, it is well to keep in mind that discoveries in this field, as has been pointed out, arise from experiment. One cannot determine the usefulness of a reagent as an inhibitor of the corrosion of tin, which is the essence of both patents, from its efficacy as an inhibitor of corrosion of other metals. There is known no broader class, to which corrosion of tin belongs. The field is empirical, and when, as the result of experiment, a new reagent is found to accomplish the result, a patentable discovery exists. Corona Chem. Co. v. Dovan Corporation, 276 U.S. 358, 48 S.Ct. 380, 72 L. Ed. 610. Consequently, anticipation can arise only from the use of the same inhibitor or combination of inhibitors on the same metal. In other words, to anticipate the invention, we must find in combination, three things: (1) An alkaline detergent; (2) a chromate inhibitor of corrosion; and (3) applicability of (2) to tin.

So far as the product claims are concerned, it should be observed that the Patent Office, at the time these applications were presented, held product claims invalid, unless the substance claimed was new for any purpose whatever. Under such rule a

product patent could not be granted for the discovery that an old substance could serve a new purpose. Consequently, method claims were frequently, as here, of great breadth. The product claims, however, were, of necessity, narrow. Consequently, the original product claims were rejected, because a mixture of caustic alkali and chromate was old as a paint remover. The claims were then limited to bring out somewhat more emphatically features of the Adler compound as a detergent. The action of the Patent Office, governed as it was by the rule then in force, was no indication as to what art was relevant to the real invention. In other words, no inference should be drawn from the changes made, beyond the fact that they were necessitated by a rule of the Patent Office, which has since been abandoned.

The claims in suit appear in the margin.[1] All of them emphasize the cleaning of tin with alkali and the use of chromate as an inhibitor of corrosion of the surface being cleaned. The product claims are, for the reasons above stated, limited to noncaustic alkalies.

Roome, No. 838,810, cited as anticipation, is a compound designed to clean silver. It does not deal with tin; contains no chromate and teaches nothing preventing corrosion of tin. Barrington, No. 1,160,563, describes a compound used in washing clothes. It is subject to the same defects as anticipation as Roome. The same is true of Campbell, No. 1,278,435, which discloses a boiler compound for softening water. Pedersen, No. 1,465,320, describes an antifreeze mixture for automobile radiators. It contains calcium chloride or sodium chloride with chromate to prevent corrosion of iron, brass or solder. There is no suggestion that chromates inhibit the corrosion of tin or that the compound would be effective with truly alkaline detergents. Solder is partly tin, but alloys and pure metals differ widely in their behavior in chemical reactions. General Electric Co. v. Hoskins Mfg. Co., 224 F. 464 (C.C.A.7th).

Mathias, No. 1,555,474, is a patent on chlorosol, disclosing a germicidal detergent, dealing in no way with corrosion of tin or chromate. Bauer, British No. 226,776, proposes to deposit a protective and electrically insulating coating on aluminum. No inhibiting action is mentioned or taught. The article from "Automotive Industries" concern antifreeze salts with calcium chlor-

[1] (1) The method of cleaning tinned metal surfaces and inhibiting corrosion of the tin thereof which comprises subjecting such surfaces to the action of a water soluble chromate compound and of an alkaline detergent. (2) The method of cleaning tinned metal surfaces and inhibiting corrosion of the tin thereof which comprises subjecting such surfaces to the action of a solution of trisodium phosphate in the presence of a dichromate of an alkali metal. (3) The method of cleaning tinned metal surfaces and inhibiting corrosion of the tin thereof, which comprises subjecting such surfaces to the action of a solution of trisodium phosphate in the presence of sodium dichromate. (4) A detergent for tinned metal surfaces comprising a major portion of a soluble noncaustic alkaline detergent and a minor portion of a water soluble chromate compound. (5) A detergent for tinned metal surfaces comprising a major portion of a soluble noncaustic alkaline detergent and a minor portion of a dichromate of an alkali metal. (6) A detergent composition for tinned metal surfaces comprising a major portion of trisodium phosphate and a minor portion of sodium dichromate. (7) The method of cleaning tinned metal surfaces and inhibiting corrosion of the tin thereof which comprises subjecting such surfaces to the action of a solution of trisodium phosphate in the presence of a dichromate of an alkali metal, the dichromate being present in an amount equal to from one to five percent of the trisodium phosphate. (8) The method of cleaning tinned metal surfaces and inhibiting corrosion of the tin thereof which comprises subjecting such surfaces to the action of a solution of trisodium phosphate in the presence of sodium dichromate, the sodium dichromate being present in an amount equal to from one to five percent of the trisodium phosphate. (9) A detergent for tinned metal surfaces comprising a soluble noncaustic alkaline detergent and a dichromate of an alkali metal, the alkali dichromate being present in an amount equal to from one to five percent of the alkaline detergent. (10) A detergent composition for tinned metal surfaces comprising trisodium phosphate and sodium dichromate, the sodium dichromate being present in an amount equal to from 1 to 5 per cent. of the trisodium phosphate. (11) The method of cleaning tinned metal surfaces which comprises subjecting such surfaces to the washing action of a solution comprising an alkaline detergent in the presence of a chromate compound soluble therein and adapted to protect the tinned surface against corrosion and checking.

ide base. It contains no teaching as to alkalies, tin or chromates. The "Metal Industry" article is not shown to be of a date early enough to anticipate. Adler disclosed his invention November 9, 1925. The publication is dated November, 1925, but there is no showing as to just when it appeared. Furthermore, the article discloses only use of a compound on pewter, which, like solder, is an alloy. It teaches nothing concerning pure tin. Rather, it proposes to teach how to clean silver-plate pewter, and contains no suggestion that chromates are inhibitors of corrosion of tin or any other metal. The article, "Causes and Prevention of Corrosion" teaches that chromium salts prevent some attack, even by acid, on iron, but the author deals with purely theoretical considerations, and makes no mention of tin or of alkaline detergents therefor or combination of the detergent and inhibitor. Stuart's use I cover in the separate findings and conclusions.

Kochs' patent arose out of experiment and resulted in a compound adequately protecting tin at temperatures of 75° C., a much higher temperature than Adler contemplated. Kochs made the discovery that there was a true combination relationship between sodium silicate and chromate, and that if they were used together, tin could be protected at higher washing temperatures than if either of them were used alone. Kochs sought merely to improve Adler, and Adler did not teach what Kochs practiced.

Defendant cites Campbell, No. 1,278,-435, already discussed, covering boiler compound. There is no suggestion of Kochs' teaching therein. Gangloff, No. 1,870,312, discloses a cleaner for porcelain, not of tin. The compound is of borax, sodium sesquicarbonate, trisodium phosphate, and sodium silicate. There is no chromate present and no teaching of the essential thought of Kochs. The same is true of Scott, No. 1,-879,953, which is a cleaner for tin, but which does not include chromate. Henkel, British, No. 332,530, suggests several compounds, none of which contain any chromate or any suggestion of combined use of chromate and silicate. Each of these four patents were cited by the Patent Office. British No. 4111 of 1911 discloses a washing powder, consisting of soda ash and sodium silicate. It indicates no conception of Kochs' idea. The Speller article discusses prevention of corrosion of refrigerator piping by the brine. The piping is of steel and brass and the brine of calcium chloride. Speller deals with refrigerating temperatures and Kochs with high temperatures. I conclude that there is nothing in the prior art to negative validity of Kochs patent.

Defendant denies infringement of either patent. In his Purity compound 8.355 per cent. thereof is anhydrous sodium chromate and in the Tridon, 5.6814 per cent. of the same agent. In the Purity, defendant makes use of soda ash and trisodium phosphate, which are alkaline detergents named in the Adler patent. The compound is within the teaching of that patent. It is an entirely alkaline detergent, possessing chromate, which inhibits corrosion. In the Tridon cleaner we find soda ash and sodium meta silicate, both alkaline detergents. The latter, however, is not mentioned in the Adler patent. But for all the purposes of Adler, the compound constitutes an entirely alkaline detergent with chromate inhibitor. Adler in fact discovered that any mixture of any alkali in any chromate would clean tin and would inhibit corrosion.

I find accordingly that both compounds infringe claims 1 and 11 of Adler, which cover the concept broadly; that claims 2, 3, 7, and 8 are infringed by the Purity cleaner. Remembering that the product claims are limited to alkaline detergents which are noncaustic, we find that claims 4 and 5, so limited, are infringed by both of defendant's compounds; that claims 6 and 10 are infringed by the Purity cleaner.

Plaintiff charges infringement of the Kochs patent only by defendant's Tridon compound. A determination of this issue involves a careful consideration of somewhat technical character as well as the doctrines of equivalents. The basic ideas, I think, I have given sufficient expression to in the formal findings and conclusions. Rather than unduly extend this memorandum, I content myself with the conclusion that defendant infringes as charged.

Defendant has filed his counterclaim, wherein he asserts that he is the true inventor; that he should be declared the owner of the patent, and that the plaintiff should be decreed to assign it to him. Though I have concluded that Mertz was not the true inventor, some consideration should be given to his relationship to the plaintiff and the invention.

We have observed the confidential relation of defendant to plaintiff at the time the patent was applied for. It has always

been the law that such a confidential agent is a trustee of any property he may purchase in his own name, in fraud of his principal. Davis v. Hamlin, 108 Ill. 39, 48 Am.Rep. 541. This rule extends to a patent, issued to a third party, useful to the principal and bought by the confidential agent. American Circular Loom Co. v. Wilson, 198 Mass. 182, 84 N.E. 133, 126 Am.St.Rep. 409. But prior to National Wire-Bound Box Co. v. Healy, 189 F. 49 (C.C.A.7th), it had not been held that the fiduciary agent could be compelled to assign a patent on his own invention. In the case cited, defendants were in a fiduciary relation to Healy and made an invention which they patented in their own names. The Circuit Court of Appeals held that the usual rules of constructive trusts applied to an invention made by the fiduciaries; that there was evidence of an intention upon the part of the fiduciaries that the invention should be the property of the principal, and that, therefore, a constructive trust resulted. Judge Sanborn followed this rule in Dowse v. Federal Rubber Co. (D.C.) 254 F. 308. There, the only fact showing an intention that his principal should own the invention was a statement by him that if others used it they would have to pay royalty to the principal.

In the present case Mertz was vice president and general manager. He knew plaintiff's needs and wants. He had discussed with his superiors and associates the marketability of a cheap noncorrosive detergent for tin. The invention was completed by a reduction to practice by Adler before November 9, 1925, and, in this situation, on November 11, 1925, defendant wrote a letter to Kochs, signed "Diversey," by himself, in which he said "We believe that you (Victor) should immediately file patent to cover the use of bichromate with trisodium phosphate." He stated also "We deem it advisable, however, to secure a patent on the use of hypochlorite." On December 19th he suggested that the patent be taken out in the name of plaintiff. Still later in January, 1926, he assented to the statement of Adler as to the latter's claim of invention. These facts indicate clearly recognition upon his part that the property rights in this invention were those for whom he was a fiduciary agent.

We have seen that Adler was the true inventor, but, if this were not true, and if the conception emanated from Mertz' mind rather than Adler, Mertz' situation with regard to his employer and his acts with regard to the subject matter thereafter are such as to make applicable the rules governing estoppel and constructive trusts. Without regard to the question of invention, therefore, if the patent were in his name, he would hold it in trust for plaintiff, and it now being in fact in the name of plaintiff, his counterclaim must fail.

There will be a decree, therefore, finding both patents valid and infringed, as hereinbefore indicated, and dismissing defendant's counterclaim for want of equity at his costs. There will be a reference to the master for accounting as to profits and damages. Proper form may be submitted.