27 C.C.P.A.(Patents)

### In re CHRISTMANN et al.
### Patent Appeal No. 4198.

Court of Customs and Patent Appeals.
Dec. 4, 1939.

Ellis S. Middleton, of New York City, for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner denying patentability in view of prior art cited of all the claims, numbered 1 to 8, inclusive, in an application for patent bearing the title "For Reaction Products of Organic Bases and Hydrofluosilicic Acid."

Claim 1, which is generic in the class of claims before us, reads as follows: "1. An insecticidal composition including a reaction product of hydrofluosilicic acid and a guanidine."

In each of the other claims a specific kind of guanidine is named. It seems to be conceded that all the claims stand or fall together.

The following references were cited: Lommel et al., 1,562,510, November 24, 1925; Minaeff et al., 1,634,790, July 5, 1927; Christmann et al., 1,915,922, June 27, 1933; Salzberg et al., 1,915,334, June 27, 1933; Salzberg et al., 1,917,463, July 11, 1933; Salzberg et al., 2,075,359, Mar. 30, 1937.

All the claims were rejected by the examiner "as unpatentable over" the last listed Salzberg et al. patent, No. 2,075,359, of March 30, 1937, on the ground that the selection of guanidine as an organic base did not involve invention especially in view of the disclosure of guanidine by Lommel et al. and the use of the fatty acid salts of the guanidines by Christmann et al.

A second ground applied by the examiner to all the claims was lack of patentability over Christmann et al. in view of Salzberg et al. and Minaeff et al.

The examiner further rejected claims 1 to 4, inclusive, as being too broad, but this ground was overruled by the board and is not before us. The other grounds were affirmed.

The issue involves chemical questions quite technical in nature. Appellants claim that the composition or reaction product, defined, comprises a new chemical compound never before prepared. The product is used as a mothproofing agent, and is claimed to act simultaneously as an exterminator and a repellant for moths or moth larvae. The specification recites, in substance, that there are two distinct types of mothproofing agents; that one type operates as an exterminator, killing the moths or moth larvae by reason of its toxic properties, while the other type is a repellant which prevents the moth larvae from attacking the fabrics to which it is applied but does not directly cause the death of the larvae through toxic action.

As we understand it, the teaching of the application is that the guanidine element (an organic base) is a repelling agent and the hydrofluosilicic acid is a toxic agent.

In the statement of the examiner it is said that the Salzberg et al. patent, No. 2,075,359 (which, while in the application stage, was in interference with an application of appellants, serial No. 652,-022, of which the instant application is a continuation in part, Salzberg et al. being awarded priority) "show[s] a wide variety of organic bases, i. e., aliphatic, aromatic and heterocyclic bases for reaction with hydrofluosilicic acid"; that Lommel et. al. disclose "that all compounds containing a certain group are mothproofing agents"; that the "guanidines contain this group," triphenylguanidine being given as an example, and that Christmann et al. "disclose the reaction products of the guanidines * * * and fatty acids such as oleic as mothproofing agents." Also, the examiner stated that Minaeff et al. show that inorganic fluosilicates are insecticidal, and that the other Salzberg et al. patents show that various fluosilicates of organic bases are wood preservatives.

So, while none of the foregoing references are claimed to show a reaction product composed of hydrofluosilicic acid and a guanidine, it was the view of the examiner that it did not involve anything inventive to substitute guanidines as an organic base. This view was also taken by the board.

In his statement the examiner directed attention to the fact that in appellants' application, serial 652,022, it was stated "that other organic bases can be substituted for the guanidines," a list being given. No copy of that application was included in the record, it being stated in the brief for appellants that "such inclusion was not thought to be necessary." The particular matter to which the examiner alluded, however, appears to be in the instant specification, and in its decision the board quoted from the latter as follows: "This invention involves a discovery that the reaction products of hydrofluosilicic acid and organic bases are effective both as repellants and exterminators for moths, moth larvae and other insects."

The board then paraphrased another statement of the specification, to the effect that the invention involves the particular discovery that the reaction products of hydrofluosilicic acid and a guanidine are effective as insecticides, and followed this with a quotation from another part of the specification, reading: "The invention is not limited to the use of the guanidine salts of hydrofluosilicic acid but it is applicable to the hydrofluosilicates of almost any of the organic bases * * *," and referred to the list of specific organic bases to which evidently the examiner alluded in his statement.

The board then said:

"It appears from the original specification that the reaction products of hydrofluosilicic acid and any organic base will all have the same effect, namely, repel moths and exterminate them. It is not seen that the selection of guanidine as the organic base to be used instead of some other organic base gives any unobvious results. Particularly is this so because guanidines by themselves have been used as moth repellants in the prior art as shown by the patents cited. It seems to us therefore that the present appealed claims are not patentable over what is claimed in the Salzberg et al. patent.

"The examiner has also applied other references to the claims and we are in agreement with his rejection thereon. In view of the prior art the present claims cannot be allowed to applicants."

From the foregoing it would appear that the tribunals of the Patent Office, particularly the Board of Appeals, gave considerable weight to the broad teachings of appellants' own application in re-

jecting the relatively narrow claims involved in the application, although, as we understand those decisions, they rest, basically, upon the prior art.

After the decision of the board appellants filed with it a request for reconsideration, accompanying same with an affidavit by Dr. William Moore, an entomologist, holding the degrees of Bachelor of Arts and Doctor of Philosophy, engaged in the active study of insecticides for the past twenty-five years.

The application for rehearing first discussed the Salzberg et al. patent, No. 2,-075,359, and pointed out that while that patent was very broad and that it was evident "every attempt was made in that application to cover all types of organic bases, to wit: aliphatic, aromatic and heterocyclic, yet there is no mention of the effectiveness of the guanidine radical," and argued that the "effect of the guanidine radical is so strikingly different in its kind of insecticidal value that if it had been contemplated by Salzberg, it would undoubtedly have been mentioned by him."

The petition for rehearing then questioned the board's interpretation of the quoted matter from appellants' instant specification which seemed to hold the teaching to be that the effect of all the reaction products, even those not including guanidine, was the same, that is that all such products possessed both repelling and toxic properties. In this connection appellants cited the experiments carried out by Dr. Moore. The purport of Dr. Moore's affidavit is that he conducted tests for moth larvae repellants, using different analine, toluidine. and amino elements named in the list and failed to procure a product which embraced the repelling characteristic until he combined the substance with a guanidine.

The board denied the petition but wrote a brief opinion reiterating its rejection upon prior art and adhering also to its construction of the matter quoted from appellants' specification. It was stated that the affidavit of Dr. Moore had been considered but that it did not change the board's views.

Obviously the case is not free from difficulty and the court is always reluctant to reverse a decision where the tribunals of the Patent Office have concurred, especially where highly technical questions are involved, as is the situation here. Nevertheless, we have not hesitated so to do where it seemed proper, as, for example, in the case of In re Sibley, 88 F.2d 960, 24 C.C.P.A., Patents, 1143, where chemical questions were involved.

In the instant case we think it is satisfactorily established that appellants have developed a product which, it seems to be conceded, is a new chemical compound never before produced, and which is shown to have utility. It was developed and demonstrated by experimentation carried out over a considerable period of time in the effort to procure an insecticide in which there would be combined both repelling and poisoning characteristics. It may be assumed that guanidine was known in the prior art to have repelling qualities when standing alone, but we do not believe the prior art teaches that it could satisfactorily be used as an organic base for a new chemical compound and retain such characteristic.

We have, therefore, arrived at the conclusion that the claims on appeal should be allowed, and this holding is not believed to conflict with the principle embraced in the various cases cited in the brief of the Solicitor for the Patent Office. Appellants' brief cited no authorities. We have found certain of those referred to in "The Law of Chemical Patents" by Thomas, Second Edition, Chapter 6, beginning at page 112, of interest in considering the question. See particularly the case of Diversey Corporation v. Mertz, D. C., 13 F.Supp. 410. Also, In re Glenn H. Joseph et al., 25 U.S.Pat.Q. 20, a decision of the Board of Appeals of the United States Patent Office.

The decision of the Board of Appeals is reversed.

Reversed.