Per Curiam:
This case was referred pursuant to Eule 37 (e) to Herbert N. Maletz, a trial commissioner of this court, with directions to make his recommendation for conclusions of law as to defendant’s motion to dismiss filed on September 20,1962. The commissioner has done so in an opinion filed April 26, 1963. It appears to the court that no request for review of the commissioner’s recommendation has been filed by the parties pursuant to the provisions of Eule 37 (e) (4) and that the time provided by the Eules for the filing of such request for review has expired. Since the court is in agreement with the opinion and the substance of the recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, defendant’s motion to dismiss as to plaintiff LeFiell Manufacturing Co. is denied and plaintiffs’ motion to amend the petition is allowed except as to that portion moving that the LeFiell Manufacturing Co. be the sole party plaintiff, which portion is denied.
opinion of commissioner
Cecil K. LeFiell, the president, general manager and principal stockholder of the LeFiell Manufacturing Co. of Cali- *867 forma, made application in July 1958 for a patent for a tube tapering machine. The application was granted and a patent was issued to him personally in February 1962. Claiming that he was the owner of the patent and that title remained in him, he brought suit here under 28 U.S.C. § 1498 to recover reasonable compensation from the defendant for the allegedly unauthorized use and manufacture by or for the United States of the invention covered by the patent.[1] Also included as plaintiff in the petition was the LeFiell company assertedly as exclusive licensee under an implied license from LeFiell.
Defendant moved to dismiss as to the company on the ground that it had no ownership right within the meaning of section 1498 since record title remained in LeFiell personally. In light of the motion to dismiss, plaintiffs moved to amend the petition and to name the company as the sole party-plaintiff. Their motion states that when the original petition was filed LeFiell was under a misconception as to the legal aspects of the relationship between him and the company and had erroneously described the company as an exclusive licensee, whereas he had always considered it to be the actual owner of the patent. Accompanying the proposed amendment was a “Confirmation of Title” in which LeFiell, under the hand and official seal of a notary public, confirmed and acknowledged that the company is and always has been the owner of the entire right, title and interest in the invention of the patent, together with all claims and rights of action incident thereto.[2] In this document LeFiell set forth that he used the time, shop facilities, employees and finances of the company in developing the invention and in manufacturing a production machine embodying it; that *868 tbe company had paid all expenses incident to securing the patent; and that the company has received all profits from the sale of tubing processed on the machine covered by the patent. For these reasons, plaintiffs argued that grounds for the motion to dismiss had been overcome and that the motion should be denied.
Defendant objected to the proposed amendment on the basis that title to the patent was still in LeFiell and that the “Confirmation of Title” was merely a statement of intention to transfer title to company ownership back to the origination of the invention, but that the necessary legal documents to accomplish that result had not been executed. In these circumstances defendant urged that the necessary legal steps should be required to clear up the confusion.
In view of defendant’s objection, LeFiell executed on October 3,1962 and recorded in the U.S. Patent Office a formal assignment to the company of the “entire right, title and interest in and to (the)- invention . . . together with all claims and rights of action and pending actions thereunder for past infringement.” Thereupon the defendant renewed its opposition to the proposed amendment to the petition, arguing that the suit for past infringement is barred by the anti-assignment statute (31 U.S.C. §203) which renders null and void assignments of claims against the United States. In this connection, defendant points out that to maintain an action for past infringement plaintiff must have been owner of the patent at the time of the infringement. Crown Co. v. Nye Tool Works, 261 U.S. 24 (1923); E. W. Bliss Co. v. United States, 53 Ct. Cl. 47 (1917), affirmed 253 U.S. 187 (1920). It insists that prior to the written assignment the company, while it might have had a shop right in the invention, lacked equitable title to the patent, and hence for past infringement stands in the position of an assignee of a claim against the United States.
Plaintiffs maintain, however, that the company is and always has been the owner of the patent in question and that the “Confirmation of Title” and “Assignment” were filed merely to verify or confirm that which has always existed and that they therefore constitute in legal effect no more than a “Quitclaim”.
*869 Against this background, the question for decision is whether the company had an ownership interest within the meaning of 28 TJ.S.C. § 1498 when the claim arose.[3]
Ordinarily the mere fact that an employee uses the time and facilities of his employer in developing an invention does not entitle the employer to ownership rights in the employee’s invention. In that event, where it appears from the facts that the employer made a substantial investment in the invention and that the inventor consented to the employer’s use thereof, the employer would have a shop right to the patent; i.e., a right to have a royalty-free non-exclusive and non-assignable license to use the invention in his business. Solomons v. United States, 137 U.S. 342, 346 (1890); Gill v. United States, 160 U.S. 426, 436 (1896); McClurg v. Kingsland, 1 How. 202 (1843); Marshall v. Colgate-Palmolive Peet Co., 175 F. 2d 215, 217 (3d Cir. 1949); Gate-Way, Inc. v. Hillgren, 82 F. Supp. 546 (D. Calif. 1949). See also 2 Walker On Patents (Deller’s ed.) p. 1471 et seq.; 16 A.L.R. 1177, et seq.; 61 A.L.R. (2d) 356 et seq.[4] But where the inventor is “more than a mere employee” and “occupie(s) such a relation to the corporation that he (is) its alter ego, in such a capacity that it is only consistent with good faith that he should recognize its ownership of the patent issued to him”, the entire right and interest in the patent — and not merely a shop right — belong to the company despite absence of a specific contract by the inventor to assign the invention. Dowse v. Federal Rubber Co., 254 Fed. 308, 310 (N.D. Ill. 1918). Whether or not such relationship exists is a question of fact to be decided upon all the circumstances of the individual case. See Restatement of Agency (2d) § 397, comment (a), and cases cited below.
*870 In Bowse, which, is the leading case on the subject, a patent for a “cable base” tire was applied for in the name of plaintiff while he was president, general manager and a director of a tire-manufacturing corporation, and issued to him after he left it. The question was whether the patent equitably belonged to the corporation or whether it had merely a shop right. Holding that the corporation owned the patent, Judge Sanborn stated:
The all-important question is Dowse’s relation to the tire-manufacturing business. If he was only a hired man, taking orders as to his work from another officer or employé, the invention belonged to him, leaving only an implied license or shop right to the corporation, and this right was only personal to it, incapable of being assigned. . . . (p. 309)
* * * * *
It . . . appears that plaintiff was not a mere employe, under the direction of a superior officer. During the whole period he was president and general manager, and one of the directors. . . . The plaintiff, therefore, was practically the corporation, taking orders from no one. His executive authority and control were practically exclusive. . . . (p. 315)
While by the law of Wisconsin he was not strictly a trustee for the corporation, only an agent, yet by reason of his relation to Willys, and the great importance of the new cable base to the corporate business success, his position was that of a quasi trustee, such as to make it clear that the patent was taken out by him for the corporation. Had the invention affected only a detail or unimportant part of the corporate business, it is probable that plaintiff would be regarded as its owner, both legal and equitable as in American Stoker Co. v. Underfeed Stoker Co. (C.C.) 182 Fed. 642; Id., 188 Fed. 314. . . . (p. 315)
See also Diversey Corp. v. Mertz, 13 F. Supp. 410, 415 (N.D. Ill. 1936) (Vice-president and general manager held to be a constructive trustee for company for patent issued in his name); Dailey v. Universal Oil Products, 76 F. Supp. 348, 356 (N.D. Ill. 1947) (President and principal stockholder found to be alter ego of company and invention taken out in his name held to belong to company); Drew & Co. v. Reinhard, 170 F. 2d 679, 682 (2d Cir. 1948) (Patent issued *871 to Chief chemist and stockholder of a company held to belong to company); Preis v. Eversharp, 154 F. Supp. 98, 102 (E.D. N.Y. 1957) (Company found entitled to assignment of its president’s interest in a patent application); North Brand Products v. Fisher, 131 USPQ 135 (D.D.C. 1961) (By reason of status and position of patentee as principal shareholder, officer, director and general manager in sole charge of experimentation, research, development, manufacture and sales, company held to be owner of legal title to patent).
In the present case, LeFiell was the president, general manager and principal stockholder of the LeFiell company at the time he made application for the patent and when it was issued in his name. In this capacity it is obvious that he was the company’s alter ego. Furthermore, according to the proposed amendment to the petition, LeFiell used the time, shop facilities, employees and finances of the company in developing the invention of the patent in suit and in manufacturing a production machine embodying the invention. The company paid the costs and attorney’s fees incident to the securing of the patent; it has received all profits from the sale of tubing processed on the machine of the patent; and no royalties or other compensation has been paid LeFiell under the patent. Also, LeFiell has always considered the company as the owner of the entire right, title and interest in and to the invention and the patent. The pleadings are not entirely clear as to the relative importance of the invention to the company. However, construing them most favorably to the plaintiffs, it can not be said that the patent in question is an unimportant part of the company’s business.
On the basis of the present record, it thus appears that the LeFiell company was, in fact, the owner of the patent when the claim arose. This may or may not be borne out by the evidence; indeed, the evidence may establish that LeFiell and not the company was the owner prior to the assignment. Therefore, while the plaintiffs should be allowed to amend their petition, both LeFiell and the company should be continued as plaintiffs so that the issue of ownership may be determined at trial in conjunction with the other issues in the case.

 To the extent relevant, that section provides: “Whenever an invention described in and covered by a patent of tbei united States is used or manufactured by or for the united States without license of the owner thereof or lawful right to use or manufacture the same, the owner’s remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.”

 35 U.S.C. (1058 ed.) §201 provides that “(a) certificate of acknowledgment under the hand and official seal of a person authorized to administer oaths within the United States . . . shall be prima facie evidence of the execution of an assignment, grant or conveyance of a patent or application for patent.”

 It is clear that if the company was the owner of the invention, and patent from the outset, it would have owned the claim when it arose and thus would not be affected by the anti-assignment statute. See Novo v. Commissioner of Internal Revenue, 113 F. 2d 320 (2d Cir. 1940) and cases cited at 322.

 A shop right is quite different than an exclusive absolute right in an invention. Indeed an exclusive licensee of a patent who has the right to sublicense others and to sue infringers has an ownership right sufficient to enable him to bring suit against the united States for infringement of the patent. Wing Engineering Corp. v. United States, 138 Ct. Cl. 260, 262 (1957); Pratt and Whitney Co. v. United States, 139 Ct. Cl. 540, 542 (1957).